IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JOHN ZIMMERLI, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) No. 17-00370-CV-W-BP |
| | ) |
| THE CITY OF KANSAS CITY, MISSOURI, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| INTERNATIONAL ASSOCIATION OF | ) |
| FIRE FIGHTERS, LOCAL UNION NO. 42, | ) |
| | ) |
| Third-Party Defendant. | ) |

## ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs filed this action in May 2017 alleging that the Defendant Kansas City, Missouri ("the City") violated various provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 *et. seq*. Now pending are cross-motions for summary judgment. The parties agree that no material fact is in dispute; thus, this case is ripe for ruling. For the reasons discussed below, the Court **GRANTS** Defendant's motion for summary judgment, (Doc. 119), and **DENIES** Plaintiffs' motion for summary judgment, (Doc. 118).

This lawsuit arises in the aftermath of the Court's decision in *Hermsen v. City of Kansas City*, Case No. 4:11-cv-753-BP (June 25, 2014). In *Hermsen*, the undersigned found that static, single-role EMTs and paramedics employed by the City did not fall within the firefighter exemption in 29 U.S.C. § 207(k) and were therefore entitled to overtime compensation.[1] This case

---

[1] The City employs EMTs and paramedics who work two types of shifts – static and dynamic. (*See* Doc. 118, p. 12, § 12.) "Static" EMTs and paramedics are assigned to a single fire station with a duty period of 24 hours. (*Id.* at p. 12, § 14.) "Dynamic" EMTs and paramedics remain in an ambulance and move about the City to cover shifts on

was brought in response to the City's post-*Hermsen* actions and involves two classes of Plaintiffs. The first class of Plaintiffs allege that despite the Court's ruling in *Hermsen*, EMTs and paramedics are still not being paid overtime compensation. The second class of Plaintiffs allege that one group of employees, referred to as Fire Medics, are incorrectly classified as exempt from the FLSA's overtime provisions – just as EMTs and paramedics were before *Hermsen*. For ease of discussion, the Court will address each class of Plaintiffs in turn.

## I. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment on a claim only upon a showing that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985). A party opposing a motion for summary judgment may not simply deny the allegations, but must

---

demand. (*Id.* at p. 13, § 19.) Plaintiffs represent only static EMTs and paramedics. Thus, throughout this Order the Court will not differentiate between static and dynamic EMTs and paramedics and refers to Plaintiffs solely as "EMTs and paramedics."

2

point to evidence in the Record demonstrating the existence of a factual dispute. Fed. R. Civ. P. 56(c)(1); *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909–10 (8th Cir. 2010).

## II. PARAMEDICS & EMTs

### A. Background

Plaintiff John Zimmerli is a paramedic for the City and represents the first class of Plaintiffs in this action, alleging that EMTs and paramedics are not being paid overtime compensation as required by *Hermsen*. In general, the FLSA requires covered employers to pay nonexempt employees "time and a half" for hours worked in excess of forty hours per workweek. *See* 29 U.S.C. § 207. After the *Hermsen* ruling, the City entered into negotiations with the union representing Plaintiffs to re-negotiate rates of pay. What resulted was a supplement to the collective bargaining agreement ("the Side Letter Agreement"), which details the calculations used to reach the hourly rates for paramedics and EMTs. (Doc. 131-5.) The Side Letter Agreement states, "[t]he base hourly rate for such [EMTs and paramedics] shall be derived by calculating the total scheduled hours and providing an hourly rate which pays the dynamic monthly rate plus five percent of such rate." (Doc. 131-5, p. 1.)[2] In part (1)(c) of the Side Letter Agreement, the City offers an example in which it pays an employee $3,073 per month.[3] From this monthly salary, the City calculates the regular hourly rate as follows:

$3,073 per month + 5% = $3,227 per month[4]

$3,227 per month x 12 = $38,724 per year

$38,724 per year ÷ 2,866 hours = $13.51 regular hourly rate

---

[2] All page numbers refer to the Court's CM/ECF system and may not match the document's original pagination.
[3] EMTs and paramedics are paid hourly, but the hourly rate is based on their monthly rate of pay as set forth in the 2015-2020 Collective Bargaining Agreement. (*See* Doc. 131-5; Doc. 113-4, pp. 104, 116–17.)
[4] This figure appears to represent a 5% raise that was negotiated between the City and the union and does not impact the Court's legal analysis. (Doc. 131-5, p. 1.)

3

(Doc. 131-5, p. 2). The number 2,866 is derived by multiplying the number of regular work hours in a week (40) by 52 weeks in a year, which results in 2,080 regular hours. To this figure the City adds the number of scheduled overtime hours (524) multiplied by 1.5 to reflect the fact that those hours are paid at the overtime rate, resulting in a total of 2,866 effective hours. Put another way, the calculations to reach the regular rate ("RR") are as follows:

> 52 weeks x 40 hours = 2,080 hours at the RR
>
> 2,604 scheduled hours – 2,080 hours = 524 hours at 1.5 times the RR
>
> 524 scheduled overtime hours x 1.5 = equivalent to 786 hours
>
> 2,080 + 786 hours = 2,866 hours equivalent for calculation of the base hourly rate

(Doc. 131-5, p. 2.)

Plaintiffs argue generally that the City's pay scheme violates the FLSA's overtime provisions because the City (1) pays EMTs and paramedics a fixed monthly rate, which causes their rate of pay to fluctuate in weeks they work different levels of hours, (2) has improperly reduced Plaintiffs' effective hourly rate, and (3) has improperly calculated the regular rate (from which the overtime rate is constructed). (Doc. 118, pp. 20–22; Doc. 134, pp. 5–6.) As discussed more fully below, the Court disagrees with each of Plaintiffs' arguments.

## B. Discussion

### 1. Whether the City Pays Plaintiffs a Fixed Monthly Rate

First, Plaintiffs argue that the City pays EMTs and paramedics a fixed monthly rate, which causes their rate of pay to fluctuate based on the number of hours they work each week. (*See* Doc. 118, pp. 21–22.) It is true that the City cannot implement a pay schedule in which "different rates are paid from week to week . . . [due to] no factor other than the number of hours worked by the individual employee." 29 C.F.R. § 778.327; *see also* 29 C.F.R. § 778.500. However, Plaintiffs

4

have not provided any evidence that the City actually pays Plaintiffs a fixed monthly salary or that the City adjusts the hourly rate of pay based on the number of hours worked in a pay period. Instead, the Record reveals that Plaintiffs are paid hourly. For example, the Side Letter Agreement indicates that EMTs and paramedics are paid hourly and that the hourly rate is calculated based on the monthly rates stated in the 2015-2020 Collective Bargaining Agreement. (*See* Doc. 131-5, p. 1.) Zimmerli's pay stub also confirms that Plaintiffs are paid hourly.[5] (*See* Doc. 135-2.) Thus, the Court finds that the undisputed facts in the record indicate that Plaintiffs are paid hourly and that their rates of pay do not fluctuate depending on the number of hours worked in a given week.

## 2. Whether the FLSA Permits the City to Reduce Plaintiffs' Hourly Rate

Plaintiffs next argue that the City violated the FLSA by reducing their effective hourly rate. The City does not dispute the fact that the Side Letter Agreement reduced the effective hourly rate of EMTs and paramedics but claims that the reduced wages were properly negotiated between the City and the union and the rates do not otherwise violate the FLSA.[6] The effective hourly rate was reduced so that the City's post-*Hermsen* changes would be budget neutral, meaning paramedics and EMTs are now paid approximately the same that they were before *Hermsen*. (Doc. 125, pp. 7–8; Doc. 134, p. 2.) For the following reasons, the Court agrees with the City and finds no violation of the FLSA.

Section 7 of the FLSA requires covered employers to pay nonexempt employees "time and a half" for hours worked in excess of forty hours per workweek. *See* 29 U.S.C. § 207. In this case, the City does exactly that. Zimmerli's pay stub confirms that for the first forty hours worked, he

---

[5] Zimmerli's pay stub is offered as an exemplar for how all paramedics and EMTs are paid by the City. Furthermore, neither party has alleged that Zimmerli's (or any other Plaintiff's) pay stub fails to accurately reflect the calculations set forth in the Side Letter Agreement. Thus, the Court assumes that the calculations in the Side Letter Agreement are accurately reflected in Plaintiffs' pay.

[6] The City relies in part on language found in a notice of proposed rulemaking and on a final rule promulgated by the Department of Labor. (*See* Doc. 125, p. 8; Doc. 120 pp. 10–12.) For the reasons stated by Plaintiffs, the Court does not rely on this rationale in reaching its decision. (*See* Doc. 128, pp. 7–8.)

5

is paid at the regular rate, and for hours worked in excess of forty hours per workweek, he is paid at a rate of one and one-half times the regular rate. (*See* Doc. 135-2; Doc. 135-3.) The fact that Zimmerli is being paid less than he wants or expects does not mean that the City is violating the FLSA.

Plaintiff further contends that the FLSA prohibits the City from reducing Plaintiffs' effective hourly rate to come into compliance with the FLSA, even if the City did so through negotiations with the union. However, the FLSA does not prohibit the City from bargaining with the union or ultimately reducing Plaintiffs' effective hourly rate to come into compliance with the Act's overtime provisions. *See, e.g.*, *Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 801 (9th Cir. 2010) (finding that "nothing in the FLSA bars an employer from contracting with his employees to pay them the same wages that they received previously, so long as the new rate equals or exceeds the minimum rate required by the FLSA") (cleaned up).

Plaintiffs rely on *Rhodes v. Bedford County*, 734 F. Supp. 289 (E.D. Tenn. 1990) to support their argument, but the Court does not find *Rhodes* persuasive for several reasons. First, the Court in *Rhodes* did not explain how or why it found the defendant's actions to constitute "a scheme intended to avoid the overtime requirements of [the FLSA]." *Rhodes*, 734 F. Supp. at 292. Second, *Rhodes* is not binding on this Court. Third, authority decided after *Rhodes* more appropriately addresses this issue.

For example, in *Anderson v. City of Bristol, Tenn.*, 6 F.3d 1168 (6th Cir. 1993), the city reduced its firefighters' hourly rate to come into compliance with the FLSA. *Anderson*, 6 F.3d at 1169. The reduction in the hourly rate was designed so that the firefighters' total compensation under the new pay scheme would be the same as that under the old pay scheme. *Id.* The Court held that the city's actions did not violate the FLSA's overtime provisions because "Section 7 does

not prohibit changes in wage rates; it prohibits payment of overtime at less than one and one-half times the regular wage rate. Therefore, the reduction in wage rate did not violate the overtime provisions because the fire fighters received the overtime pay due to them." *Id.* at 1173.

Similarly, in *Wethington v. City of Montgomery*, 935 F.2d 222 (11th Cir. 1991), the city reduced its firefighters' pay to comply with the overtime provisions of the FLSA. *Wethington*, 935 F.2d at 225. The total hours worked and the total salary did not change; the only change was to the hourly rate of pay. *Id.* The court ultimately found that the decrease in hourly rate did not violate the FLSA because the Act did not apply at the time the city converted the firefighters' rates of pay. *Id.* at 228. The court also indicated that even if the Act had applied to the city's actions, the wage reduction would not have violated the FLSA. *Id.* at 228–29. The court stated, "[n]othing in the Act prohibits such a reduction [in wages]. Indeed, the Supreme Court has held that schemes designed to maintain the same wage after the Act's effective date cannot be invalid solely because they seek such consistency." *Id.* at 228 (citing *Walling v. A.H. Belo Corp.*, 316 U.S. 624 (1942)).

The Court finds the reasoning in these cases persuasive. The FLSA does not prohibit reducing hourly wages; it only requires one and one-half times the regular rate of pay for hours worked over forty in a workweek. Here, the evidence in the Record demonstrates that the City has complied with the FLSA. For these reasons, the Court finds that the City's reduction in Plaintiffs' hourly wages did not violate the FLSA.[7]

Plaintiffs also argue that the City's reduction in hourly rate violates Section 8 of the FLSA. Section 8 prohibits the City from discriminating against its employees based on their entitlement

---

[7] Plaintiffs also contend that if they work all the hours scheduled in a given month (which would include overtime and non-overtime hours), they would not be paid a premium over their stated monthly rate. But, as discussed above the evidence in the Record indicates that the City pays Plaintiffs the regular rate for the first forty hours of a workweek and "time and a half" for hours worked in excess of forty. Moreover, the City has also offered evidence demonstrating that if an EMT or paramedic works unscheduled hours, those hours are paid at the regular rate if worked during the first 40 hours of the workweek and paid at the overtime rate if worked during hours in excess of 40 hours. (*See* Doc. 135-4.) Plaintiffs present no contrary evidence, so the Court discerns no violation of the FLSA.

7

to coverage under the FLSA.  *See* 29 U.S.C. § 215(a)(3).  Plaintiffs correctly point out that several courts have held that a City's reduction of fire fighters' base wages violates § 8 of the FLSA.  However, the cases cited by Plaintiffs are distinguishable from the present case.  Specifically, the cases cited by Plaintiffs all feature a *unilateral* reduction in pay imposed by the City, whereas in this case the reduction in pay was agreed to by the City and the union.  *See Prof'l Firefighters Ass'n of Clayton by Thorp v. City of Clayton*, 759 F. Supp. 1408, 1410 (E.D. Mo. 1991); *see also Alexander v. City of Plainview*, 694 F. Supp. 221, 223 (N.D. Tex. 1988) ("A unilateral reduction of regular pay intended to nullify the FLSA amendments is unlawful"); *Craven v. City of Minot, N.D.*, 730 F. Supp. 1511, 1513 (D.N.D. 1989) (finding that the City's "unilaterally imposed" reduction in pay to be a clear violation of Section 8); *Hill v. City of Greenville, Tex.*, 696 F. Supp. 1123, 1126 (N.D. Tex. 1988) ("Defendant's action . . . of unilaterally reducing Plaintiffs' hourly rate of pay was 'discriminatory' within the meaning of section 8").

Plaintiffs claim that "[w]hether the change was bi-lateral or unilateral in nature is not pertinent."  (Doc. 128, p. 6.)  Yet, the court in *Professional Firefighters* appeared to rely on this distinction, noting Section 8's legislative history:

> A **unilateral** reduction of regular pay . . . that is intended to nullify this legislative application of overtime compensation to State and local government employees is unlawful.  Any other conclusion would in effect invite public employers to reduce regular rates of pay shortly after the date of enactment so as to negate the premium compensation mandated by this legislation ... In what we view as analogous circumstances, DOL regulations explicitly condemn **employer** efforts to adjust or recalculate regular rates of pay so as to evade the overtime requirements of the Act[.]

*Prof'l Firefighters*, 759 F. Supp. at 1413 (emphasis added) (citing Joint Explanatory Statement of the Committee of Conference, House Conference Report No. 99–357 at 8–9, *reprinted in* Vol. 2 1985 U.S. Code Cong. & Admin. News 651, 670–71).  The *Professional Firefighters* court did not find that any reduction in pay would amount to discrimination based on the firefighters' FLSA

8

coverage.  Rather, the court noted that a *unilateral* reduction of pay, imposed through *employer efforts*, is unlawful.  In this case, the City and Plaintiffs' union bargained to reach new pay rates, and as discussed above, those pay rates comply with the FLSA.

Plaintiff further argues that the City's conduct violates the FLSA because "FLSA rights cannot be abridged by contract or otherwise waived."  (Doc. 128, pp. 6–7.)  While this is true generally, the Court finds it inapplicable here.  Plaintiffs appear to argue that the City has contracted away their right to "provisions [of the FLSA] barring schemes to avoid paying overtime[.]"  (Doc. 128, p. 7.)  For the reasons stated above, the Court finds that the City's pay scheme complies with the overtime provisions of the FLSA and is not a "scheme" to avoid paying overtime.  And because the City did not implement a "scheme" to avoid paying overtime, the City did not abridge or waive Plaintiffs' rights by contract.

### 3. The City's Overtime Calculations

Finally, Plaintiffs argue that the City has not properly calculated overtime compensation for paramedics and EMTs.  The Court disagrees.  The FLSA requires covered employers to pay nonexempt employees "at a rate not less than one and one-half times the regular rate at which he is employed" for hours worked in excess of forty hours per workweek.  29 U.S.C. § 207.  Thus, to determine whether the City's pay scheme violates the FLSA, the Court must first determine the "regular rate" at which Plaintiffs are paid.  The "regular rate" is the "hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed."  29 C.F.R. § 778.108 (citing *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)).  "When determining the regular rate, courts are required to look beyond that which the parties have purported to do, as the regular rate is an actual fact."  *United States Dep't of Labor v. Fire & Safety*

9

*Investigation Consulting Servs., LLC*, 915 F.3d 277, 281 (4th Cir. 2019) (*citing 149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 204 (1947)).

"[T]he regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113(a). "If a designated base salary is intended to cover overtime hours as well as non-overtime hours, it is necessary to divide the salary by the total hours . . . because a failure to do so will result in a rate that is not representative of the rate actually paid for the 'normal, non-overtime workweek.'" *Aaron v. City of Wichita, Kan.*, 54 F.3d 652, 656 (10th Cir. 2007); *see also Singer v. City of Waco, Tex.*, 324 F.3d 813, 824–25 (5th Cir. 2003) ("the district court was required to include all the hours regularly worked by the fire fighters in the divisor"). In addition, "[t]he Supreme Court has stated that if a salary includes a premium for overtime work, it must be deducted before dividing the salary by the number of hours worked so that the resulting rate is not inflated by the overtime premium." *Aaron*, 54 F.3d at 656 (*citing Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 463 (1948)).

The evidence in the Record establishes that Plaintiffs' salary includes a premium for overtime work. This is evident from the calculations in the Side Letter Agreement, and Plaintiffs do not argue otherwise. (*See* Doc. 131-5.) Therefore, in determining the regular rate the City must (1) deduct the premium for overtime work and (2) divide the remaining salary by the total hours for which the salary is intended to compensate. *See Aaron*, 54 F.3d at 656 (*citing Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 463 (1948)). The evidence in the Record indicates that the City has done so.

To calculate the regular rate, the City divides the total annual salary by the number of hours for which Plaintiffs are to be paid in a year. "This divisor – the number of hours for which

10

[Plaintiffs are] scheduled to be *paid* in a year – is different from the number of hours for which [Plaintiffs are] scheduled to *work* in a year." *Fulmer v. City of St. Albans*, 2:02-cv-01053, Doc. 55, p. 2 (Sept. 5, 2003) (emphasis in original). Because Plaintiffs are scheduled to work 524 overtime hours in a year, and because each overtime hour is to be paid at one-and-one-half times the regular rate, the City converts Plaintiffs' scheduled overtime hours into "straight-time hours" (524 multiplied by 1.5) and adds the resulting number (786) to the 2,080 regular hours to arrive at 2,866 hours. This figure represents the number of hours for which a firefighter is scheduled to be paid. The City then divides the employee's annual salary (the stated monthly rate multiplied by 12) by 2,866 to reach the regular hourly rate. The Side Letter Agreement calculates the regular rate using as an example a fictitious employee with a salary of $38,724. The calculations to reach the regular rate can be explained by the following equations:

   [2,080 x RR] + [524 x 1.5 x RR] = $38,724

   [2,080 x RR] + [786 x RR] =$38,724

   [2,866 x RR] = $38,724

   RR = $13.51

(*See* Doc. 131-5, p. 2.) This method of calculating the regular rate appear to comply with the FLSA.

The Fourth Circuit addressed a similar case in *Fulmer v. City of St. Albans, WV*, 125 Fed. Appx 459 (2005). In *Fulmer*, the City calculated its regular rate by dividing its firefighter's annual salary by the total hours they were scheduled to be paid, 3,328 hours. The City reached this number by first multiplying the 832 scheduled overtime hours by 1.5, then by adding the resulting number (832 x 1.5 = 1,248) to the 2,080 scheduled regular hours. *Fulmer*, 125 Fed. Appx. at 460. This resulted in 3,328 hours for which the firefighters were scheduled to be paid (1,248 overtime hours

11

+ 2,080 regular hours = 3,328 scheduled hours). The firefighters challenged the City's method of calculating the regular rate, but the Fourth Circuit ultimately found the City's calculations complied with the FLSA. The court noted, "[i]f the City did not convert the firefighters' scheduled overtime hours into straight-time hours before calculating their regular rate, the firefighters' regular rate would be inflated." *Id.* at 461.

The facts are almost identical here. By multiplying the scheduled overtime hours by 1.5, the City's properly accounts for the overtime premium included in Plaintiffs' salary. Thus, the regular rate is representative of the rate actually paid for a normal, non-overtime workweek. *See Aaron*, 54 F.3d at 656 (*citing Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 463 (1948)). The Court finds that the evidence in the Record indicates that the City is properly calculating Plaintiffs' overtime compensation.

For these reasons, the Court finds that paramedics and EMTs are being paid proper overtime compensation as required by the FLSA. Defendant's motion for summary judgment on this issue is granted.

## II. FIRE MEDICS

### A. Background

Plaintiff Matthew Dietrick is a Fire Medic and represents the second class of Plaintiffs in this action, alleging that Fire Medics are incorrectly classified as exempt from the FLSA's overtime provisions. The job description of a Fire Medic states they must be "highly skilled in emergency medical care, firefighting work, answering emergency medical calls and in preventing, combating, and extinguishing fires, and the routine custodial maintenance of quarters." (Doc. 120-1, p. 7.) Fire Medics must have a valid paramedic or EMT license and must have met the training requirements for a firefighter of the Kansas City Fire Department. (*Id.* at p. 8; Doc. 113, p. 6, ¶

12

38.) Typically, Fire Medics rotate shifts. When Fire Medics are assigned to a shift on an ambulance, they work as an EMT or paramedic. (*Id.* at pp. 6–7.) When they are assigned to a shift on a fire suppression apparatus, they work as a firefighter. (*Id.*) And even when a Fire Medic is assigned to a fire suppression apparatus, he or she may be "detailed off" to work on an ambulance. (Doc. 113, p. 6, ¶ 41.)

While working on an ambulance, Fire Medics are designated as "fire combat support" roles. (Doc. 113, p. 6, ¶ 44.) Fire Medics working on an ambulance provide medical services; they do not carry fire protection gear, such as fireproof suits, SCBA equipment, or other tools necessary to fight fires. (*Id.* at ¶ 43.) While assigned to an ambulance, Fire Medics are not allowed within fifty feet of a burning building. (*Id.* at ¶ 44.) However, Fire Medics assigned to ambulances are sometimes expected to "erect and place ('throw') ladders; provide incident command if they are the appropriate person to do so; deploy, connect, and straighten fire hose; and participate in building evacuation. These activities occur in what the parties have referred to as the "warm zone." (Doc. 120, p. 9, ¶ 9; Doc. 124, p. 7, ¶ 9.)

Plaintiffs argue that Fire Medics are entitled to overtime compensation for shifts worked as an EMT or paramedic on an ambulance.[8] The City maintains that all work performed by Plaintiffs, including shifts worked on an ambulance, are exempt under 29 U.S.C. 207(k). For the reasons discussed below, the Court agrees with the City.

---

[8] Plaintiffs' articulation of their claim has changed over time. Initially, Plaintiffs argued that (1) during an unidentified six-month period, Plaintiffs were assigned to work "nearly" exclusively as EMTs and paramedics and not as firefighters, (2) during this time Plaintiffs were not "responsible" for fire suppression, and (3) as a result, they are entitled to compensation for overtime hours worked during the six-month period. (*See* Doc. 128, pp. 12–14.) Then, in supplemental briefing requested by the Court, Plaintiffs argued that all ambulance shifts are non-exempt. (Doc. 134, p. 8.) Plaintiffs claim that they "certainly may be entitled to pursue additional pay periods other than the six-month period at issue but do not currently assert them." (*Id.*) Regardless, the Court would reach the same conclusion under either articulation of Plaintiffs' claim.

13

**B. Discussion**

As mentioned above, the FLSA requires covered employers to pay nonexempt employees "at a rate not less than one and one-half times the regular rate at which he is employed" for hours worked in excess of forty hours per workweek. 29 U.S.C. § 207. Section 207(k) provides an exemption for "public agenc[ies] engaged in fire protection." *Id.* at § 207(k). The City "relies on the partial overtime pay exemption for fire protection employees found in [29 U.S.C. § 207(k)] when paying overtime to its [Fire Medics]." (Doc. 113, p. 6, ¶ 39.) "Fire protection activities" include "an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker, who"

> (1) is trained in fire suppression,
>
> (2) has the legal authority and responsibility to engage in fire suppression, and
>
> (3) is employed by a fire department of a municipality, county, fire district, or State;
>
> and is engaged in
>
> (4) the prevention, control, and extinguishment of fires or
>
> (5) response to emergency situations where life, property, or the environment is at risk.

29 U.S.C. § 203(y). "The FLSA is construed liberally in favor of employees; exemptions are 'to be narrowly construed against the employers seeking to assert them.'" *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). The City bears the burden of proving that Plaintiffs fit "plainly and unmistakably" within the terms of the exemption. *See id.*

The evidence in the Record indicates that Fire Medics are (1) trained in fire suppression, (2) have the legal authority to engage in fire suppression, (3) are employed by a fire department of a municipality, and (4) respond to emergency situations where life, property, or the environment

14

is at risk. (*See* Doc. 113, p. 7, ¶ 46.) Thus, the relevant question for the Court is whether the undisputed facts in the Record demonstrate that Fire Medics have the "responsibility to engage in fire suppression" when assigned to an ambulance.[9] Critical to this inquiry is whether the phrase "responsib[le] to engage in fire suppression" requires any *actual engagement* in fire suppression.

Neither the Supreme Court nor the Eighth Circuit has ruled on the issue of whether Fire Medics (or similar dual-role employees) have "responsibility to engage in fire suppression" as contemplated by the § 203(y) exemption. However, the Ninth and Third Circuits have held that employees have the "responsibility" to engage in fire suppression when they have "some real obligation or duty to do so. If a fire occurs, it must be their job to deal with it." *Cleveland v. City of Los Angeles*, 420 F.3d 981, 990 (9th Cir. 2005); *Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299, 317 (3d Cir. 2008) (adopting *Cleveland*'s rationale). The ruling in *Cleveland* has been interpreted to require at least some level of engagement in fire suppression to qualify for § 203(y)'s exemption.[10] *See, e.g.*, *Weaver v. City & Cty. of San Francisco*, California, 2006 WL 2411455, at *2 (N.D. Cal. Aug. 18, 2006) ("[T]he *Cleveland* court held that 'responsibility' required more, and that firefighters/paramedics must, at a minimum, actually perform fire suppression work").

Meanwhile, the Eleventh and Fifth Circuits have held that the term "responsibility" is "a forward-looking, affirmative duty or obligation that an employee may have at some point in the

---

[9] Plaintiffs do not dispute that Fire Medics are "responsible" for fire suppression when assigned to work on a fire suppression apparatus and would therefore would fit within § 207(k)'s exemption during that time.

[10] Plaintiffs contend that this Court "adopted *Cleveland v. City of Los Angeles* and its progeny in *Hermsen v. City of Kansas City*," and thus the *Cleveland* is "controlling law" as it applies here. (Doc. 136, p. 6.) While it is true that the Court found *Lawrence* and *Cleveland* instructive when it was deciding the *Hermsen* case, that decision does not bind the Court to *Cleveland* here. Importantly, the issue before the Court in *Hermsen* was completely different than the issue before the Court here. In *Hermsen* the Court did question whether Kansas City's EMTs and paramedics fell within the § 203(y) exemption. However, the Court's decision turned on whether EMTs and paramedics were "trained" in fire suppression, as required by § 203(y)(1). In this case, the issue before the Court is different: whether the phrase "responsibility to engage in fire suppression" requires any actual engagement in fire suppression. That issue was not before the Court in *Hermsen*, so the Court's reliance on *Cleveland* in that case is irrelevant. Therefore, the Court rejects the argument that it is somehow bound by the decision in *Cleveland*.

15

future" and that an employee may be exempt "even though they spend one hundred percent of their time responding to medical emergencies." *Huff v. DeKalb Cty., Ga.*, 516 F.3d 1273, 1281 (11th Cir. 2008); *McGavock v. City of Water Valley, Miss.*, 452 F.3d 423, 427 (5th Cir. 2006). Under this standard, § 203(y) requires no actual engagement in fire suppression. *See Huff*, 516 F.3d at 1281; *see also Lawrence*, 527 F.3d at 320 (Hardiman, J., dissenting). For the reasons discussed below, the Court agrees with the Eleventh and Fifth Circuits' interpretation of § 203(y).

"As with any question of statutory interpretation, we turn first to the plain language of the statute. In ascertaining the plain meaning of a statute, we presume that a legislature says in a statute what it means and means in a statute what it says." *Stanley v. Cottrell, Inc.*, 784 F.3d 454, 465 (8th Cir. 2015) (cleaned up). The text of the statute states that "Fire protection activities" include

> an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker, who –
>
> (1) is trained in fire suppression, has the legal authority and **responsibility to engage in fire suppression**, and is employed by a fire department of a municipality, county, fire district, or State; and
>
> (2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

29 U.S.C. § 203(y) (emphasis added). The statute's text and structure support the conclusion that § 203(y) does not require actual engagement in fire suppression.

> Subsection (1) of § 203(y) is phrased conjunctively. Accordingly, all employees falling within the exemption must be (a) trained in fire suppression, (b) have the legal authority and responsibility to engage in fire suppression; *and* (c) be employed by a public fire department. By contrast, subsection (2) of § 203(y) is phrased disjunctively. Thus, in addition to meeting *all* of the requirements of § 203(y)(1), an exempt employee must also be (a) engaged in the prevention, control, and extinguishment of fires; *or* (b) engaged in the response to emergency situations where life, property, or the environment is at risk.

*Lawrence*, 527 F.3d at 322 (Hardiman, J., dissenting) (emphasis in original). Plaintiff's construction of § 203(y) – which would require actual engagement in fire suppression – would leave subsection (2) superfluous. That is, if the phrase "responsibility to engage in fire suppression" required actual engagement in fire suppression, an employee would necessarily be both "engaged in the prevention, control, and extinguishment of fires" and "engaged in the response to emergency situation," making those two statutory requirements redundant. "Courts should interpret statutory language in a manner that gives effect to all terms so as to avoid rendering terms useless." *United States v. Days Inns of Am., Inc.*, 151 F.3d 822, 825 (8th Cir. 1998) (citing *Moskal v. Untied States*, 498 U.S. 103, 109–110 (1990)); *see also In re Windsor on the River Assocs., Ltd.*, 7 F.3d 127, 130 (8th Cir. 1993) (Court must "avoid statutory interpretation that renders any section superfluous and does not give effect to all of the words used by Congress"). The use of the disjunctive term "or" in subsection (2) indicates that Congress intended employees to fall within the exemption if they actually fight fires *or* they respond to emergency situations where life, property, or the environment is at risk. "The ordinary usage of the word 'or' is disjunctive, indicating an alternative. Construing the word 'or' to mean 'and' is conjunctive, and is clearly in contravention of its ordinary usage." *United States v. Smith*, 35 F.3d 344, 346 (8th Cir. 1994). Thus, as the Eleventh and Fifth Circuits have observed, the Court finds that § 203(y) does not require actual engagement in fire suppression. "Put another way, 'responsibility' does not imply any actual engagement in fire suppression, and employees may have a 'responsibility to engage in fire suppression' without ever actually engaging in fires suppression themselves. This 'responsibility' is a forward-looking, affirmative duty or obligation that an employee may have at some point in the future." *Huff*, 516 F.3d at 1281. "Were it otherwise, Congress could have

17

omitted that provision entirely or used the conjunctive 'and.'" *Lawrence*, 527, F.3d at 323 (Hardiman, J., dissenting).

The Court concludes that Fire Medics assigned to an ambulance have the responsibility to engage in fire suppression because they have a "forward-looking, affirmative duty or obligation" that may (or may not) come to fruition in the future. The fact that Fire Medics assigned to an ambulance may not engage in fire suppression activities on a particular shift is unimportant; the relevant inquiry is whether their job duties make them available to be called upon to engage in fire suppression activities if necessary. First, the job description of a Fire Medic states they must be "highly skilled in emergency medical care, firefighting work, answering emergency medical calls and in preventing, combating, and extinguishing fires, and the routine custodial maintenance of quarters." (Doc. 120-1, p. 7.) Second, Fire Medics assigned to ambulances are also sometimes expected to "erect and place ('throw') ladders; provide incident command if they are the appropriate person to do so; deploy, connect, and straighten fire hose; and participate in building evacuation. (Doc. 120, p. 9, ¶ 9; Doc. 124, p. 7, ¶ 9.) While Fire Medics assigned to ambulances are not allowed in and do not have gear for the "hot zone," the § 203(y) exemption does not depend on whether employees have the responsibility to engage in *every* aspect of fire suppression.[11] Throwing ladders, providing incident command, assisting with fire hoses, and participating in building evacuations are no less fire suppression activities than putting out fires. These facts demonstrate that Fire Medics have a forward-looking obligation to engage in fire suppression –

---

[11] This interpretation is consistent with the introductory language of § 203(y), which states that the exemption applies to "**paramedic[s and] emergency medical technician[s]**" who, unlike firefighters, are typically not charged with putting out fires. 29 U.S.C. § 203(y) (emphasis supplied); *see also Lawrence*, 527 F.3d at 312 (Hardiman, J., dissenting) (citing 145 Cong. Rec. 28, 520 (1999) ("[Congress' purpose in] adding § 203(y) . . . was to 'ensure that firefighters who are cross-trained as emergency medical technicians, HAZMAT responders and search and rescue specialists would be covered by the exemption even though they may not spend all of their time performing activities directly related to fire protection.'")).

18

even when assigned to an ambulance. For these reasons, the Court finds that Fire Medics are exempt from the FLSA's overtime provisions.

## III. CONCLUSION

Defendant's motion for summary judgment is **GRANTED** and Plaintiffs' motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
DATE: July 12, 2019　　　　　　　　　　UNITED STATES DISTRICT COURT