# United States Court of Appeals
## For the Eighth Circuit

---

No. 19-2721

---

John Zimmerli, on behalf of themselves and all other persons similarly situated; Matthew Dietrick, on behalf of themselves and all other persons similarly situated

*Plaintiffs - Appellants*

v.

The City of Kansas City, Missouri

*Defendant - Appellee*

---

Appeal from United States District Court
for the Western District of Missouri - Kansas City

---

Submitted: September 24, 2020
Filed: May 6, 2021

---

Before KELLY, WOLLMAN, and STRAS, Circuit Judges.

---

KELLY, Circuit Judge.

This case involves the interpretation and application of the Fair Labor Standards Act of 1983 (FLSA), 29 U.S.C. § 201 *et seq.*, and its accompanying federal regulations. First, we must determine whether a class of emergency medical technicians (EMTs) and paramedics has been improperly denied overtime compensation using the wage calculation formula set forth in its members' collective bargaining

agreement. Second, we must decide whether a separate class of dual-function firefighter/paramedics has been improperly classified as partially exempt from overtime compensation because its members are "employee[s] in fire protection activities" who have the "responsibility to engage in fire suppression." Having jurisdiction under 28 U.S.C. § 1291, we affirm the district court[1] on both issues.

## I. Background

Plaintiffs John Zimmerli and Matthew Dietrick, employees of the Kansas City, Missouri Fire Department (Kansas City), brought this class-action lawsuit against the city in May 2017 to recover overtime compensation under the FLSA. Zimmerli, a static, single-job paramedic, sues on behalf of himself and similarly situated EMTs and paramedics, conditionally certified by the district court as a class of "Static, Single Job EMT and/or Paramedics" (Static EMT/Paramedics) under the opt-in, collective action provisions of the FLSA, 29 U.S.C. § 216(b). He alleges that Kansas City is violating the FLSA by underpaying members of the class, who were previously recognized as entitled to overtime compensation. See Hermsen v. City of Kansas City, No. 11-00753-CV-W-BP, 2014 WL 12773937, at *7 (W.D. Mo. June 25, 2014). Dietrick, on the other hand, is a dual-job paramedic, cross-trained in both firefighting and emergency medical services. He sues on behalf of himself and similarly situated individuals, conditionally certified under 29 U.S.C. § 216(b) as a class of "Fire Medics," and alleges that Kansas City has underpaid members of the class by treating them as partially exempt from the FLSA's overtime provision.

On February 28, 2019, after limited discovery, the parties agreed that there were no material facts in dispute and cross-moved for summary judgment. On July 12, 2019, the district court entered summary judgment in favor of Kansas City. The Plaintiffs now appeal, arguing that the district court erred in determining (1) that Static

---

[1]The Honorable Beth Phillips, Chief Judge, United States District Court for the Western District of Missouri.

EMT/Paramedics were properly being paid overtime compensation and (2) that Fire Medics are partially exempt from overtime pay because they have the responsibility to engage in fire suppression activities under 29 U.S.C. § 203(y).

A. Static EMT/Paramedics

The first class of plaintiffs is comprised of Static EMT/Paramedics.[2] Static EMT/Paramedics are based out of fire stations and are scheduled to work 24-hour shifts, alternating workweeks of either 48 or 72 hours in a seven-day period.[3]

In 2014, the district court held in another case that Kansas City's static, single-job EMT/paramedics were not subject to the FLSA's overtime exemption for "employee[s] in fire protection activities" and were therefore entitled to overtime compensation. Hermsen, 2020 WL 12773937, at *7. After that ruling, Kansas City entered into negotiations with the union representing the Static EMT/Paramedics to renegotiate their wages to comply with the FLSA's overtime requirement. The parties reached an agreement that updated Static EMT/Paramedics' hourly rates, which they memorialized in a side letter to the collective bargaining agreement that was then in effect. Several months later, Kansas City and the Static EMT/Paramedics' union agreed to a new method for calculating Static EMT/Paramedics' hourly rates from

---

[2]Generally, paramedics are emergency medical personnel who are trained and licensed in more advanced emergency services than their counterparts, EMTs. Compare *Paramedic*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003) ("[A] specially trained medical technician licensed to provide a wide range of emergency services (as defibrillation and the intravenous administration of drugs) before or during transportation to a hospital."), with *EMT*, id. ("[A] specially trained medical technician certified to provide basic emergency services (as cardiopulmonary resuscitation) before or during transportation to a hospital.").

[3]In contrast, dynamic EMT/Paramedics are required to work 40 hours per week and are based out of Kansas City's Eastwood Facility. The Static EMT/Paramedics class is composed solely of Static EMT/Paramedics.

monthly wage scales, memorializing the payment scheme in a new collective bargaining agreement and side letter agreement (collectively, the 2015 Collective Bargaining Agreement).

To calculate a Static EMT/Paramedic's base hourly rate under the payment scheme, Kansas City selects the Static EMT/Paramedic's respective target monthly wage according to their seniority. After applying a 5% increase to that rate, the selected wage is converted to an hourly rate. This is done by multiplying the monthly wage by 12 (months in a year) then dividing by a number of hours (adjusted to reflect the proportion of those hours that will be paid at the overtime rate) that the Static EMT/Paramedic is scheduled to work in a year. For example, consider a Static EMT/Paramedic with a target monthly wage of $3,073:

$3,073 per month + 5% = $3,227 per month
$3,227 per month x 12 = $38,724 per year
$38,724 per year ÷ 2,866 scheduled hours[4] = $13.51 regular hourly rate

Continuing the example, Kansas City would pay that static EMT/Paramedic $13.51 for every regular work hour in a workweek (up to 40) and pay them one and one-half

[4]As described in the 2015 Collective Bargaining Agreement, this number is derived by weighting the number of scheduled hours in a year to reflect the proportion of hours that will be paid at the overtime rate. Assuming Kansas City schedules Static Paramedic/EMTs to work 2,604 hours every year, that number of hours is properly adjusted to 2,866 as follows:

52 weeks x 40 hours = 2,080 regular work hours per year
2,604 – 2,080 = 524 scheduled overtime hours per year
524 x 1.5 overtime rate = 786 weighted overtime hours
2,080 + 786 = 2,866 adjusted hours per year

Put another way, because a Static EMT/Paramedic is scheduled to work 524 overtime hours every year, they will be compensated for working 2,604 hours as though they had worked 2,866 hours at the regular hourly rate.

times that amount ($20.26) for every overtime hour worked over 40. See 29 U.S.C. § 207(a). Kansas City has calculated the base hourly rates of Static EMT/Paramedics according to this formula since the 2015 Collective Bargaining Agreement went into effect after the Hermsen decision. Record evidence, including Zimmerli's own pay stubs, demonstrates that Kansas City has paid Static EMT/Paramedics on an hourly basis using base hourly rates calculated from the formula. Record evidence also demonstrates that Kansas City paid Static EMT/Paramedics at a rate greater than one and one-half times their base hourly rates for hours worked in excess of 40.

B. Fire Medics

The second class of plaintiffs is comprised of cross-trained or dual-purpose firefighter/paramedics, colloquially known as "Fire Medics." Based on their job class specification, the Fire Medics' work "involves training for and participating in duties of protecting life through the performance of rescue firefighting and emergency medical activity." Fire Medics must maintain paramedic licenses and ambulance credentials, and they must be trained in fire suppression and receive firefighter certification. For any given shift, Fire Medics can be assigned to either a fire suppression apparatus (*e.g.*, fire engine) or an ambulance. When assigned to a fire suppression apparatus, Fire Medics are charged with the same duties performed by firefighters, including donning fire protective gear and self-contained breathing apparatuses (SCBAs) and providing fire suppression at fire scenes, regardless of the need for medical treatment.

This case, however, concerns the Fire Medics' role when they are assigned to ambulances. While working a shift on an ambulance, Fire Medics "do not carry fire protection gear including fireproof suits, SCBA equipment or even tools necessary to fight fires." Additionally, they are "strictly designated as 'fire combat support' roles," are not permitted to go within 50 feet of a burning building (*i.e.*, the "hot zone"), and principally provide medical services. Nevertheless, Fire Medics assigned to ambulances are responsible for some activities in a fire scene's "warm zone" and

"have been ordered in the past and [are] expected to erect and place ('throw') ladders; provide incident command if they are the appropriate person to do so; deploy, connect, and straighten fire hose[s]; and participate in building evacuation." Finally, and central to the Fire Medics' legal claim, Kansas City has treated Fire Medics as partially exempt from the FLSA's overtime provision because the City considered them to be "employee[s] in fire protection services." See 29 U.S.C. § 207(a), (k).

C. Statutory and Regulatory Framework

The Fair Labor Standards Act of 1983 requires that overtime compensation be paid at one and one-half times the regular rate when an employee works more than 40 hours in a seven-day week. See 29 U.S.C. § 207(a);[5] see also 29 C.F.R. § 778.108 (defining the "regular rate" as "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed" (citing Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945))). The overtime provision, in the words of the Supreme Court, was intended "to spread employment through imposing the overtime pay requirement on the employer and to compensate the employee for the burden of a workweek in excess of the hours fixed by the Act." Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am., 325 U.S. 161, 167 (1945).

---

[5]Section 207(a)(1) states:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Case 4:17-cv-00370-BP Document 144-1 Filed 05/06/21 Page 6 of 19
Appellate Case: 19-2721 Page: 6 Date Filed: 05/06/2021 Entry ID: 5032640

The FLSA exempts certain employees from the overtime requirement, meaning they are not paid any overtime for work in excess of 40 hours each week. See, e.g., 29 U.S.C. § 213(a)(1) (exempting "any employee employed in a bona fide executive, administrative, or professional capacity" from the FLSA's minimum wage and overtime provisions). Other individuals whose work does not fit the normal pattern of 40-hour workweeks, like "employee[s] in fire protection activities," are partially exempt from the FLSA's overtime requirements. 29 U.S.C. § 207(k); see Christian v. City of Gladstone, 108 F.3d 929, 931 (8th Cir. 1997). Under that partial exemption, "employee[s] in fire protection activities" must work a total of 216 hours during a work period of 28 days before being entitled to overtime compensation. See 29 U.S.C. § 207(k). In 1999, Congress defined "employee[s] in fire protection activities." See id. § 203(y); see infra Section III.B. Relying on sections 207(k) and 203(y), Kansas City has treated Fire Medics as employees in fire protection services who are partially exempt from the FLSA's overtime provisions.

## II. Standard of Review

"We review a district court's decision to grant or deny summary judgment de novo." Grage v. N. States Power Co., 813 F.3d 1051, 1054 (8th Cir. 2015). "Summary judgment is only proper where the evidence, viewed in the light most favorable to the nonmovant, shows that no genuine issue of material fact exists, such that the movant is entitled to judgment as a matter of law." Id. (internal quotation omitted). "There is no genuine issue of material fact when 'the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.'" Id. (quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)).

The party moving for summary judgment generally has the burden of demonstrating the absence of any genuine issues of material fact. See id. In an FLSA exemption case, "the employer . . . has the burden of proving the employee fits within one of the FLSA exemptions." Id.; see also Spinden v. GS Roofing Prods. Co., 94

F.3d 421, 426 (8th Cir. 1996) (noting the employer's burden "to prove that [an] exemption applies by demonstrating that their employees fit plainly and unmistakably within the exemption's terms and spirit" (cleaned up)). We review questions of law, namely "whether employees' particular activities excluded them from the overtime benefits of the FLSA," de novo. Grage, 813 F.3d at 1054 (cleaned up) (quoting Spinden, 94 F.3d at 426). We review underlying questions of fact, including employees' job duties and the amount of time devoted to such duties, for clear error. See id.

## III. Discussion

### A. Overtime Pay for Static EMT/Paramedics

First, we consider whether Kansas City has been paying proper overtime compensation to Static EMT/Paramedics in accordance with the FLSA. At the outset, it is important to remember what the FLSA requires: that employees who work more than 40 hours in a week are paid at a rate no less than "one and one-half times *the regular rate*" at which they are employed. 29 U.S.C. § 207(a)(1) (emphasis added). An employee's regular rate is "the hourly rate *actually paid* the employee for the normal, non-overtime workweek for which he is employed." Youngerman-Reynolds, 325 U.S. at 424 (emphasis added); see also id. (noting the regular rate is "not an arbitrary label chosen by the parties; it is an actual fact"). To test the validity of a wage agreement under the FLSA, we "look beyond that which the parties have purported to do" and determine how employees are actually paid. 149 Madison Ave. Corp. v. Asselta, 331 U.S. 199, 204 (1947); see also Youngerman-Reynolds, 325 U.S. at 424–25 ("Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts.").

Case 4:17-cv-00370-BP Document 144-1 Filed 05/06/21 Page 8 of 19
Appellate Case: 19-2721 Page: 8 Date Filed: 05/06/2021 Entry ID: 5032640

After a close examination of the record and the parties' arguments, we conclude that Kansas City has paid overtime compensation to Static EMT/Paramedics in compliance with the FLSA's overtime provisions.[6] The undisputed evidence demonstrates that Kansas City pays Static EMT/Paramedics a regular hourly rate for the first 40 hours worked in a workweek and pays an overtime rate greater than one and one-half times that regular hourly rate for all subsequent overtime hours worked.[7] Each Static EMT/Paramedic's hourly rate is calculated using a mathematical formula set forth in the 2015 Collective Bargaining Agreement and is dependent on two variables: the number of scheduled work hours in a year (typically 2,604 hours) and the Static EMT/Paramedic's monthly pay scale (which estimates a Static EMT/Paramedic's monthly compensation based on their seniority). Once the hourly rate has been calculated, Kansas City pays a Static EMT/Paramedic on an hourly basis, at that rate for the first 40 hours worked per week and at greater than one and one-half times that rate for any additional hours worked. Plaintiffs' union representatives and Kansas City voluntarily entered into this arrangement after the district court's Hermsen decision, and the city's compensation scheme complies with all that the FLSA's overtime provision requires.

---

[6]Plaintiffs do not dispute that Kansas City pays them a regular hourly rate that complies with the FLSA's minimum wage provisions. See 29 U.S.C. § 206(a)(1).

[7]To the extent Plaintiffs argue that Kansas City does not pay Static EMT/Paramedics an hourly rate but instead a fixed monthly rate, we disagree. As an initial matter, that argument is belied by the parties' labor agreements—for example, the 2015 Collective Bargaining Agreement specifically sets forth a formula to determine the hourly rate that Static EMT/Paramedics are to be paid. Additionally, the uncontested evidence confirms that Static EMT/Paramedics are actually paid on an hourly basis. Kansas City offered Zimmerli's own pay stubs to illustrate how it pays Static EMT/Paramedics, and Plaintiffs do not dispute that the pay stubs show that Zimmerli is paid an hourly rate that accurately reflects the hourly rate calculation in the 2015 Collective Bargaining Agreement. The district court did not clearly err in finding that Static EMT/Paramedics are paid hourly.

Plaintiffs nevertheless argue that the formula Kansas City uses to calculate the hourly rate of pay violates the FLSA and results in Static EMT/Paramedics being paid less than they are owed. Analogizing this case to 149 Madison Avenue Corp. v. Asselta, 331 U.S. 199 (1947), they argue that Kansas City—just like the employer in 149 Madison Avenue—is violating the FLSA by employing a "mathematical scheme using an artificial hour figure to determine the hourly rate for overtime compensation purposes."

In 149 Madison Avenue, the Supreme Court struck down a payment scheme that used a mathematical formula to calculate employees' hourly rate based on a fixed weekly wage. Id. at 202–03; see Asselta v. 149 Madison Ave. Corp., 156 F.2d 139, 141 (2d Cir. 1946), aff'd, 331 U.S. 199 (1947). Although the wage agreement instructed that the hourly rate would be calculated by dividing an employee's weekly earnings by the number of hours actually worked, the Court determined the formula actually took into account "only the hours the employee was scheduled to work." 149 Madison Ave., 331 U.S. at 202. From this, the Court concluded that the payment scheme "made no adequate provision for overtime compensation until [certain employees] had worked a total of 54 hours in one week and until other regular employees had worked a total of 46 hours." Id. at 204–05. In effect, the employer had attempted to circumvent the overtime requirements of § 207(a) by adopting a payment scheme that in practice did not pay overtime for work in excess of 40 hours. See id. at 208 (noting that the scheme paid regular employees "either precisely or substantially that which employees would have been paid had the contract called for employment on a straight 46 hour week with payment of time and one-half only for hours worked in excess of 46").

Plaintiffs point to no comparable evidence showing that Kansas City does not pay Static EMT/Paramedics on an hourly basis or at an FLSA-compliant overtime rate for hours worked in excess of 40. As noted above, the undisputed evidence demonstrates that once Kansas City applies the 2015 Collective Bargaining Agreement formula to calculate Static EMT/Paramedics' hourly rates, it actually pays

Static EMT/Paramedics on an hourly basis with overtime. The fact that Kansas City uses a mathematical formula to calculate a Static EMT/Paramedic's hourly rate from a monthly pay scale in the first instance does not, standing alone, convert Kansas City's payment scheme into one that violates the FLSA. Contrary to Plaintiffs' assertion otherwise, the method by which Static EMT/Paramedics in this case are actually paid is materially distinguishable from how the employees were actually paid in 149 Madison Avenue.

Plaintiffs also argue that the formula used to calculate Static EMT/Paramedics' hourly rates—a formula agreed upon by Kansas City and Plaintiffs' union representatives after months of negotiation—does not comport with regulations governing the determination of an employee's regular rate. See 29 C.F.R. § 778.109 *et seq.* Plaintiffs rely on 29 C.F.R. § 778.113, which sets the standards for determining the regular rate of an employee employed solely on a salaried basis. Plaintiffs, however, are paid on an hourly—not a salaried—basis, see supra note 7, and thus § 778.113 does not govern the determination of Static EMT/Paramedics' regular rate. See Caltenco v. G.H. Food Inc., 824 F. App'x 88, 89 (2d Cir. 2020) (declining to apply § 778.113 to an employee who was paid on an hourly basis); see also 29 C.F.R. § 778.110 (setting standards for determining the regular rate of an employee "employed solely on the basis of a single hourly rate"). Moreover, the FLSA does not require employers to adhere to a particular formula for determining employees' compensation so long as the formula ultimately used complies with the FLSA's minimum wage and overtime requirements. See 149 Madison Ave., 331 U.S. at 203–04 ("It was not the purpose of Congress in enacting the Fair Labor Standards Act to impose upon the almost infinite variety of employment situations a single, rigid form of wage agreement."). Simply put, there is no genuine issue of material fact as to whether Kansas City actually pays Static EMT/Paramedics the hourly rate (which exceeds the minimum wage) calculated using the agreed-upon formula or that it pays overtime for hours worked in excess of 40. This is what the FLSA requires.

Finally, Plaintiffs argue that Kansas City unlawfully adopted its payment scheme in retaliation for the Hermsen decision. See 29 U.S.C. § 215(a)(3) (making it unlawful for an employer "to discharge or in any other manner discriminate against any employee [for] fil[ing] any complaint or institut[ing] . . . any proceeding under or related to [the FLSA]"). In their view, Kansas City committed retaliation by reducing the hourly rates of Static EMT/Paramedics so their overall wages would equal their pre-Hermsen wages. But "nothing in the [FLSA] bars an employer from contracting with his employees to pay them the same wages that they received previously, so long as the new rate equals or exceeds the minimum rate required by the FLSA." Parth v. Pomona Valley Hosp. Med. Ctr., 630 F.3d 794, 801 (9th Cir. 2010) (quoting Walling v. A.H. Belo Corp., 316 U.S. 624, 630 (1942)). Plaintiffs ignore that the current payment scheme was not the result of Kansas City's unilateral imposition of lowered wages, as in the distinguishable cases upon which they rely. See, e.g., Rhodes v. Bedford Cnty., 734 F. Supp. 289, 292–93 (E.D. Tenn. 1990); Pro. Firefighters Ass'n of Clayton v. City of Clayton, 759 F. Supp. 1408, 1412–13 (E.D. Mo. 1991); Alexander v. City of Plainview, 694 F. Supp. 221, 223 (N.D. Tex. 1988). To the contrary, after Hermsen held that static, single-job EMT/Paramedics are entitled to overtime pay, Plaintiffs' union representatives and Kansas City voluntarily entered into an agreement providing for the current payment scheme after months of bilateral negotiation.[8] Through the agreement, Kansas City accomplished two things: it achieved budget neutrality by ensuring that Static EMT/Paramedics' overall wages remained the same, and it complied with the FLSA's overtime requirement by

---

[8] Plaintiffs are correct as a general matter in noting that "FLSA rights cannot be abridged by contract or otherwise waived because [doing so] would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 740 (1981). However, that rule is not applicable here because Kansas City's payment scheme comports with and does not supersede the FLSA's overtime requirement and anti-retaliation provision. Contra Martino v. Mich. Window Cleaning Co., 327 U.S. 173, 178 (1946) (holding that a longstanding collective bargaining agreement could not supersede the FLSA's overtime requirement).

ensuring that Static EMT/Paramedics were paid an overtime rate for all hours worked over 40. Doing so through a bilateral process was not retaliatory under the FLSA. See Wethington v. City of Montgomery, 935 F.2d 222, 228–29 (11th Cir. 1991); Belo, 316 U.S. at 630.

Plaintiffs' core objection to the current payment scheme is that it pays Static EMT/Paramedics effectively the same amount after the Hermsen decision that they were paid before. In Hermsen, the Western District of Missouri held that Static EMT/Paramedics were entitled to overtime compensation under 29 U.S.C. § 207(a). 2014 WL 12773937, at *7. That decision entitled Static EMT/Paramedics to improperly withheld back pay and to be paid according to the FLSA's overtime provision going forward. It did not guarantee, however, that they would be paid higher wages in the future. The FLSA simply requires that the Static EMT/Paramedics be paid at "one and one-half times the regular rate at which [they are] employed" for hours worked in excess of 40. 29 U.S.C. § 207(a)(1); see Anderson v. City of Bristol, 6 F.3d 1168, 1173 (6th Cir. 1993) ("[Section 207(a)] does not prohibit changes in wage rates; it prohibits payment of overtime at less than one and one-half times the regular wage rate."). The undisputed evidence establishes that Kansas City does this. We do not doubt that Plaintiffs' dissatisfaction with their current compensation is genuine, but those concerns cannot be redressed by the FLSA.

### B. Treatment of Fire Medics Under § 207(k)

We next consider whether the Kansas City Fire Medics are "employee[s] in fire protection activities" and therefore partially exempt from the FLSA's overtime provision. See 29 U.S.C. § 207(k). In 1999, Congress amended the FLSA to provide

a statutory definition of "employee[s] in fire protection activities."[9] 29 U.S.C. § 203(y).

> "Employee in fire protection activities" means an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials workers, who—
>
> > (1) is trained in fire suppression, has the legal authority and *responsibility to engage in fire suppression*, and is employed by a fire department of a municipality, county, fire district, or State; and
> >
> > (2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

Id. § 203(y) (emphasis added). The parties do not dispute that Fire Medics are trained in fire suppression, have the legal authority to engage in fire suppression, are employed by a fire department, and respond to emergency situations where life, property, or the environment is at risk. Rather, the crux of their disagreement is whether Fire Medics have the "responsibility to engage in fire suppression."

Although this circuit has not yet had the opportunity to weigh in on this question, four others have interpreted and applied the term "responsibility to engage in fire suppression" in varying contexts, creating what the parties view as a circuit split. The Ninth Circuit was the first to construe § 203(y) after its addition in 1999. See Cleveland v. City of Los Angeles, 420 F.3d 981 (9th Cir. 2005). There, the court considered whether "dual function paramedics," who were "fully trained and certified in both fire suppression skills and advanced life support paramedics," were exempt

[9]Before 1999, the Department of Labor (DOL) defined "employee in fire protection activities" by regulation. See 29 C.F.R. §§ 553.210, .212 (1987). The DOL revised its regulations in 2011 to conform with the statutory amendment, which supplanted the prior regulations. See 29 C.F.R. §§ 553.210, .212 (2011).

from overtime because they had the "responsibility to engage in fire suppression." Id. at 983 (emphasis omitted). In doing so, the court first ascertained the "ordinary, common meaning" of "responsibility" at the time § 203(y) was added to the FLSA. See id. at 989. The court relied on dictionaries that defined "responsibility" as "a duty, obligation or burden." Id. (quoting American Heritage Dictionary of the English Language, Fourth Edition (Houghton Mifflin 2000)); see also id. at 990 ("'Responsible' means 'having an obligation to do something, or having control over or care for someone, as part of one's job or role.'" (quoting New Oxford American Dictionary (2001))).

Based on these definitions, the court concluded that having the "responsibility" to engage in fire suppression means a person "must have some real obligation or duty to do so. If a fire occurs, it must be their job to deal with it." Id. at 990. Looking to the actual responsibilities of dual-function paramedics, the court then determined that they did not have the "responsibility to engage in fire suppression." Id. The court came to this conclusion by relying on the following material, undisputed facts: (1) the paramedic ambulances did not carry fire-fighting equipment or breathing apparatuses; (2) a dispatcher did not know whether single- or dual-function paramedics would be sent to respond to a call; (3) paramedic ambulances were not regularly dispatched to fire scenes and were dispatched only when there appeared to be a need for advanced life support medical services; (4) dual-function paramedics were not expected to wear fire protective gear; (5) dual-function paramedics were dispatched to a variety of incidents, like vehicle accidents and crime scenes, where they were expected to perform only medical services; and (6) there was no evidence that a dual-function paramedic had ever been ordered to perform fire suppression. See id.

The Fifth Circuit was the next court to interpret § 203(y). See McGavock v. City of Water Valley, 452 F.3d 423 (5th Cir. 2006). Although the court did not consider the provision's application to cross-trained firefighter/paramedics, it stated in dicta that, by amending the FLSA to add § 203(y), Congress "intended all emergency medical technicians (EMTs) trained as firefighters and attached to a fire

department to be considered employees engaged in fire protection activities even though they may spend one hundred percent of their time responding to medical emergencies." Id. at 427. Contrary to the view of the Ninth Circuit, the court seemed to suggest that one need not actually be called upon to engage in fire suppression activities to nevertheless have the responsibility of doing so.

A couple of years later, the Eleventh Circuit weighed in. See Huff v. DeKalb County, 516 F.3d 1273 (11th Cir. 2008). In Huff, the court considered whether two groups of employees, cross-trained "firefighter/paramedics" and "fire medics," were partially exempt from overtime compensation pursuant to § 207(k). Id. at 1274. Both firefighter/paramedics and fire medics could be assigned to fire trucks, were required to wear fire protection gear at fire scenes, and could be ordered (and disciplined for failing) to engage in fire suppression. Id. at 1275. Firefighter/paramedics performed "basic firefighting and life rescue duties, in addition to responding to medical emergencies, disasters, multi-casualty incidents, and other types of emergencies," were authorized to extinguish small fires (like brush fires), and could be required to suppress an "exterior structure fire." Id. In comparison, fire medics were "responsible for firefighting, extrication, life rescue, and providing advanced emergency medical care for the sick and injured" and were generally "required to perform firefighting." Id.

The Eleventh Circuit held that *both* firefighter/paramedics and fire medics had the "responsibility to engage in fire suppression" because they were "qualified to engage in fire suppression and must [have done] so if ordered." Id. at 1279. Reading § 203(y) "as a consistent whole," id. at 1280 (quoting Burlison v. McDonald's Corp., 455 F.3d 1242, 1247 (11th Cir. 2006)), the court reasoned that an employee need not actually engage in fire suppression to have the responsibility to do so. Id. at 1280–81. "'[R]esponsibility' is a forward-looking, affirmative duty or obligation that an employee may have at some point in the future." Id. at 1281; see also id. (describing "responsibility" as a duty "which one may or may not ever be called upon to perform"). Under this view, because both the firefighter/paramedics and the fire

Case 4:17-cv-00370-BP Document 144-1 Filed 05/06/21 Page 16 of 19
Appellate Case: 19-2721 Page: 16 Date Filed: 05/06/2021 Entry ID: 5032640

medics had advanced firefighting training, were equipped with fire protection gear, were regularly sent to fire scenes, and would be subject to discipline if they refused to engage in fire suppression, the court concluded that they had the "responsibility to engage in fire suppression" and were therefore exempt from overtime. Id. at 1281–82.

Shortly thereafter, the Third Circuit considered the same question in Lawrence v. City of Philadelphia, 527 F.3d 299 (3d Cir. 2008), this time for "fire service paramedics" (FSPs). According to their job description, FSPs' responsibilities included "advanced life support and field paramedical work responding to emergency calls *from the public* to perform medical assistance with emphasis on the stabilization of patients to permit safe transport to a full-service medical facility." Id. at 304–05. The court noted their job description did not "refer[] to any role with respect to fire protection or fire suppression." Id. at 305. Although testimony established that FSPs were trained in fire suppression and could theoretically be called upon to do so, at trial the city could point to no instances in which FSPs were actually expected to perform fire suppression activity, like entering a burning building, "other than a few marginal instances involving nothing more than moving a hose line." Id. at 305–06.

Reviewing the plain language of the statute and its legislative history, the Third Circuit endorsed the Ninth Circuit's interpretation from Cleveland, noting that "a responsibility is something that is mandatory and expected to be completed as part of someone's role or job." Id. at 317. Because FSPs were not expected to fight fires, their job description was medical in nature, they were not disciplined for failing to engage in fire suppression, and they were not dispatched to fire scenes to fight fires, the court concluded that they did not have the "responsibility to engage in fire suppression" activities. Id. In essence, because FSPs were "paramedics who ha[d] some level of fire suppression exposure but who [we]re by no means firefighters," they were properly excluded from the overtime exemption. Id. at 319. But see id. at 326–27 (Hardiman, J., dissenting) (noting belief that FSPs were responsible for engaging in fire suppression because testimony suggested they could be ordered—and disciplined for refusing—to do so by their superior officers).

To decide this case, we need not weigh in on one side or the other of this seeming divergence of views among our sister circuits. Even assuming the Ninth and Third Circuits' narrower interpretation of "responsibility"—"something that is mandatory and expected to be completed as part of someone's role or job," Lawrence, 527 F.3d at 317—applies, Kansas City has carried its burden to demonstrate that Fire Medics have the responsibility to engage in fire suppression. The analysis is fact-intensive, and there is no dispute that Fire Medics receive advanced firefighter training and are fully cross-trained firefighter/paramedics. Even when assigned to ambulances and relegated to fire combat support roles in the "warm zone," Fire Medics are expected and asked to perform tasks that amount to engaging in fire suppression, including throwing rescue ladders; providing incident command; deploying, connecting, and straightening fire hoses; and participating in building evacuation.

In this way, Fire Medics are different from the cross-trained firefighter/paramedics that other courts have determined were not exempt under § 207(k). In Cleveland, it was undisputed that the dual-function paramedics were "expected to perform only medical services" and there was no evidence that they ever participated in fire suppression. 420 F.3d at 990; see also id. at 984 (noting that, at fire scenes, dual-function paramedics "treat injured people, standby for patient care, and take exhausted firefighters to the hospital; they do not assist with any fire suppression"). And in Lawrence, FSPs were not trained or certified in advanced firefighting, were not authorized to staff fire apparatuses, and were called to fire scenes only to provide medical care. See 527 F.3d at 315–16. By contrast, Fire Medics in Kansas City are most comparable to the firefighter/paramedics and fire medics in Huff, who were regularly sent to fire scenes and required to assist with fire suppression if needed and who were consequently held to be partially exempt from the FLSA's overtime provisions under § 207(k). See 516 F.3d at 1281–82.

Although the Fire Medics' responsibilities do not include donning fire protection gear, entering burning buildings, or dousing fires directly, their duties are integral to fire suppression. Here, even assuming we apply the stricter framework

adopted by the Third and Ninth Circuits, Fire Medics have the "responsibility to engage in fire suppression" because they have a "real obligation or duty" to assist with it while assigned to ambulances. See 29 U.S.C. § 203(y). As a result, the Fire Medics are partially exempt from the FLSA's overtime provision under 29 U.S.C. § 207(k).

## IV. Conclusion

For the reasons stated above, we affirm the order of the district court in full.

STRAS, Circuit Judge, concurring.

Based on the district court's finding that the Static Emergency Medical Technicians and Paramedics were compensated on an hourly basis, I agree that Kansas City did not violate the Fair Labor Standards Act's overtime requirements. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a). But I still have serious doubts about how the district court got there, which was to treat them as if they were salaried rather than hourly employees. *See* 29 C.F.R. § 778.113. It then confused matters further by calculating overtime using annual-salary figures, rather than the "workweek equivalent." *Id.* § 778.113(b); *see also Singer v. City of Waco*, 324 F.3d 813, 823–25 (5th Cir. 2003) (approving a different calculation for salaried employees with alternating work-period schedules). I do not understand the court to be blessing this patchwork approach, however, so I concur.

______________________________

Case 4:17-cv-00370-BP Document 144-1 Filed 05/06/21 Page 19 of 19
Appellate Case: 19-2721 Page: 19 Date Filed: 05/06/2021 Entry ID: 5032640